# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN THE MATTER OF TARA CROSBY, LLC** | CIVIL ACTION<br>NO: 17-05391<br>SECTION: "I" (4) |

## ORDER

Before the Court is a **Petitioners Crosby Tugs, LLC and Tara Crosby, LLC's Motion to Quash and/or Postpone Depositions of Kurt Crosby and Ivy Danos (R. Doc. 71)**. No opposition was timely filed, however, the Court heard oral argument on May 30, 2018.

## I. Background

This litigation arises out of the sinking of the M/V CROSBY COMMANDER while towing the MARMAC 25, a barge, in the Gulf of Mexico. It began with the filing of a limitation of liability action by Tara Crosby, LLC and Crosby Tugs, LLC pursuant to admiralty and maritime jurisdiction and Federal Rule of Civil Procedure 9(h). R. Doc. 1. Joseph Hebert and Robert Pitre filed claims in the action against Tara Crosby, LLC, Crosby, Tugs, LLC and Tetra Technologies, Inc. pursuant to the Jones Act and general maritime law. R. Doc. 11. The Court then granted leave for Linda Bryant to file claims as Administrator of the Succession of David Coltrin. R. Doc. 56. Joseph Hebert, Robert Pitre, and David Coltrin were all crewmembers aboard the CROSBY COMMANDER at the time of its sinking. Hebert and Pitre both allege that they sustained severe personal injuries as the result of the sinking. Coltrin drowned as a result of the sinking and claims are being asserted by Linda Bryant as administrator of his succession.

The instant motion before the Court is a motion to quash the depositions of Kurt Crosby and Ivy Danos filed by the Petitioners. R. Doc. 71. Kurt Crosby is the CEO of Crosby Tugs, LLC and Tara Crosby, LLC and Ivy Danos is the Crosby Offshore Operations Manager. Petitioners

argue that the Court should not allow the deposition of the Crosby CEO because: (1) Kurt Crosby has no unique or superior knowledge in the case; (2) there are less intrusive and burdensome ways of obtaining any information he has or it can be obtained from lower level employees; and (3) the purpose of the deposition is harassment because Claimants have also sought the deposition of Tetra's Senior Vice-President, which indicates these depositions are solely meant to annoy opposing parties.

With respect to Ivy Danos, the Petitioners do not oppose the deposition, instead they sought to either quash or postpone it as it was set for May 11, 2018, a time when Petitioner's counsel was unavailable. They seek an order from the Court setting the deposition at a time convenient to the parties and witness.

No opposition was originally filed by the Claimants. Due to the nature of the deposition at issue the Court set oral argument on the motion. The day before oral argument the Claimants filed an opposition improperly into the record without receiving leave to file an untimely opposition. During argument the Court accepted the untimely opposition on this occasion, but stated that any additional untimely filings would not be allowed to be filed into the record. The Court, therefore, puts the Claimants and Claimants' counsel on notice that any further untimely filings shall be disregarded and motions shall be granted as unopposed if no timely opposition is filed.

Claimants in their opposition argue that: (1) Petitioners injected Kurt Crosby into this matter since they seem to intend to elicit that he was concerned with Claimants' well-being; (2) Kurt Crosby has relevant, unique knowledge with respect to heavy weather procedures because he sits on the storm committee and personally approves the policies established in the Crosby Towing Safety & Environmental Management System (TSEMS) Manual; (3) Kurt Crosby is a signatory

to contracts that other individuals have less valuable knowledge of these documents because they were not signatories to them.

## II. **<u>Standard of Review</u>**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Rule 26(b)(1) specifies that "[i]nformation within the scope of discovery need not be admissible in evidence to be discovered." Rule 26(b)(1) also specifies that discovery must be "proportional to the needs of the case, considering the important of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

Under Rule 26(b)(2)(C), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the discovery sought; or (3) the proposed discovery is outside of the scope permitted under Rule 26(b)(1).

Rule 26(c) governs the issuances of Protective Orders in discovery. A Court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The rule offers a variety of potential options that the Court may use to protect the moving party. Fed. R. Civ. P. 26(c)(1)(A)-(H). "The party seeking the protective order bears the burden to show 'the necessity of its issuance, which contemplates a particular and specific demonstration of fact [.]' " *Cazaubon v. MR Precious Metals, LLC*, 14-2241, 2015 WL 4937888, at *2 (E.D. La. Aug. 17, 2015) (quoting *In re Terra*

*Int'l*, 134 F.3d 302, 306 (5th Cir. 1998)). The trial court enjoys wide discretion in setting the parameters of a protective order. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("To be sure, Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."). Finally, Rule 26(c)(1) requires a certification that the moving party has conferred or attempted to confer in good faith with the other affected party to attempt to resolve the issue without the court's interference.

## III. <u>Analysis</u>

Petitioners state that they received the Notice of Deposition for Kurt Crosby and Ivy Danos for May 11, 2018. R. Doc. 71-1, 71-2. Petitioners informed the Court that with respect to the deposition of Ivy Danos the motion was moot, because the motion to quash was filed solely to avoid a scheduling issue. As such, the Court finds that with respect to Mr. Danos the motion is moot.

Petitioners informed the Court they still seek to quash the deposition of Kurt Crosby, the CEO and President of Crosby Tugs, LLC and Tara Crosby, LLC. They argue that this type of deposition is colloquially known as an "apex" deposition and should only permitted in limited circumstances that have not been met in this case.

Petitioners argue that the situation in the instant case is identical to that of *Turner v. Novartis Pharmaceuticals*, 2010 WL 5055828 (E.D. La. Dec. 2, 2010) and *Pan Am. Life Ins. Co. v. La. Acquisitions Corp.*, 2015 WL 4168435 (E.D. La. July 9, 2015). They argue that those cases stand for the proposition that it is the responsibility on the party seeking the deposition to demonstrate to the Court the necessity of the deposition after utilizing less intrusive means of discovery and the party moving for the deposition must demonstrate that the executive possessed

personal or superior and unique knowledge and whether the information could be obtained from lower-level employees or less burdensome means, including written interrogatories.

Petitioners state that the only justification they have received of why the deposition of Mr. Crosby is necessary is that Claimant Pitre complained to Mr. Crosby shortly after returning to shore that he believed the M/V CROSBY COMMANDER did not have enough fuel. Petitioners state that a simple interrogatory would accomplish a confirmation or denial of whether that statement was made. Further, they argue that Claimant Pitre has admitted that he made the same statement to Mr. Wade Savoy, the Petitioners' Quality, Health, Safety & Environmental Manager, who was deposed on May 1, 2018. They argue that this makes any knowledge of Mr. Crosby neither unique nor superior and there is a less intrusive way to obtain the discovery sought.

In addition, the Petitioners argue that Claimants have noticed the deposition of Tetra's Senior Vice President. They contend this shows a motivation to harass and annoy witnesses and the parties, rather than seek discoverable information. Petitioners ask the Court to quash the deposition and instead order the Claimants to submit their inquiry to Mr. Crosby via written interrogatory and/or determine whether Mr. Savoy can confirm or deny the comments at issue.

During argument, when asked why the statements regarding the fuel by Mr. Pitre to Kurt Crosby is probative and why the Court should allow the deposition of Mr. Crosby, Claimants argued that they believed Petitioners would try to elicit testimony that Mr. Crosby expressed concern for the captains of the vessel when they were at the hospital as an attempt to bolster the company through this testimony.

Claimants also argued that the deposition should occur because Mr. Crosby has unique knowledge as he personally approves the policies contained in the TSEMS Manual. Claimants argued that the heavy weather procedure in the manual is at issue. Claimants argued that part of

the theory of the case is that the Petitioners did not enforce the procedures that they had in the TSEMS manual. Claimants also argued that Petitioners did not have a policy with respect to the size of tugs required to tow vessels of particular vessels and that the COMMANDER did not have the appropriate power resulting in the sinking.

Claimants next argued that Kurt Crosby was on the storm committee listed in the heavy weather procedure policy and should be able to be deposed based on his involvement in that committee.

Claimants also argued that Kurt Crosby was the signatory to the key documents in the case including the Master Service Towing Agreement and the Commercial Contract that arises from the towing agreement. Claimants' counsel indicated a concern that when asking witnesses questions about documents they get objections, statements, and follow-up testimony meant to eviscerate the individuals knowledge with respect to the documents. They contend that these documents set forth the parameters and legal obligations of Petitioners and Tetra Technologies, Inc.

This Court has previously noted that there is no Fifth Circuit law that strictly prohibits the deposition of high-level executives. "In fact, Federal Courts have permitted the depositions of high level executives when conduct and knowledge at the highest corporate levels of the defendant are relevant in the case." *McGee v. Arkel Intn'l, LLC*, 2013 WL 12228710 (E.D. La. Aug. 9, 2013) (citing *Gauthier v. Union Pacific Railroad Co., et al.* 2008 WL 2467016 (E.D. Tex. June 18, 2008); *In re Bridgestone/Firestone, Inc., Tires Products Liability Litig.,* 205 F.R.D. 535, 536 (S.D. Ind. 2002)). In *McGee* this Court found that there was no bar to proceeding with the corporate president's deposition when the Rule 30(b)(6) deposition as well as other employees were unable to adequately answer the plaintiff's questions.

However, this Court has also quashed depositions when the party seeking the deposition was unable to demonstrate how the depositions sought were relevant to the claim, but held the deposition could occur if the party seeking the deposition was able to demonstrate the deposition was still necessary after utilizing less intrusive means of discovery. *Turner v. Novartis Pharmaceuticals*, 2010 WL 5055828, at *3-*4 (E.D. La. Dec. 2, 2010). Other courts in this district have stated that, "to determine whether to permit the deposition of a high-level executive, federal courts have considered the following factors: (1) whether the moving party can demonstrate that the executive possessed personal or superior and unique knowledge; and (2) whether the information could be obtained from lower-level employees or through less burdensome means, such as written interrogatories." *Pan Am. Life Ins. Co. v. La. Acquisitions Corp.*, 2015 WL 4168435, at *4 (E.D. La. July 9, 2015); *see also Baine v. Gen. Motors Corp.,* 141 F.R.D 332, 334 (S.D. Ala.1991).

First, with respect to the argument about Petitioners are going to attempt to bolster the company through Mr. Crosby's testimony, the Court finds this to not be relevant to the instant litigation. Further, the Petitioners have not listed Mr. Crosby as a witness for trial such that there is no indication that Petitioners are seeking to elicit the CEO's testimony of compassion or care for the captains as a means of bolstering the company. The Court does not find this to be an acceptable grounds to warrant a deposition of Kurt Crosby.

Second, to the extent that Claimants argue that because Kurt Crosby signed off on each policy and that each policy was not properly enforced that does not warrant a deposition because the presence or substance of the policy is not the dispute. With respect to the policies, the Court notes that what is relevant is who should have been aware of the policies at issue and who ignored those policies such that the Claimants suffered injury.

7

Third, with respect to the lack of policies in the TSEMS Manual, the Court is also once again unconvinced as to why that warrants a deposition of the CEO. Claimants indicated that they have an expert that will indicate what policies are missing and what policies the Petitioners should have included in the TSEMS Manuual that would have prevented the incident.

Fourth, with respect to the heavy weather procedure, Claimants' counsel was unable to articulate his theory of the case as to whether the heavy weather policy was defective facially, improperly implemented, or ignored. Based on the inability to articulate a theory of the case with respect to the policy or policies in question the Court finds that should it even allow a deposition to occur it will not become a fishing expedition as to any topic. Claimants' counsel indicated that he had deposed some individuals on the storm committee and had noticed the deposition of others and that the Rule 30(b)(6) deposition of Petitioners would occur on June 20, 2018. As such, the Court notes that Claimants had not yet used all of the less intrusive means of obtaining the information sought. If Claimants sought information as to why Kurt Crosby adopted or approved the policy that could be submitted via interrogatory. The Court notes that the questions asked of the other members of the storm committee would be the same as those asked of Kurt Crosby such that there has not been a demonstration of unique or superior knowledge.

Fifth, with respect to the contract documents it was indicated to the Court that neither Petitioners nor Tetra were blaming each other for the incident. The Court does not find that just because the contract documents exists provides Claimants with the opportunity to depose the CEO. Further, if Claimants contend that a party or parties did not adhere to the obligations under the contract that is a theory of the case, but does not demonstrate why the deposition of Kurt Crosby in particular is required.

The Court will not allow a unilateral and blanket deposition of the CEO. However, in order to properly rule on the motion, additional information is required from the Claimants. The Court orders that Claimants shall submit a list of specific questions to the Court and opposing counsel that they would like to ask Kurt Crosby and the Court shall decide what, if any, of the questions will be allowed should the Court find a deposition necessary.

Further, the Court was informed the Rule 30(b)(6) deposition of Wade Savoy is occurring on June 20, 2018, and Mr. Savoy is also a member of the storm committee. Therefore, the Court orders that a transcript of that deposition shall be provided to the Court to determine what if any information Claimants still are unaware of such that the deposition of Kurt Crosby is necessary. As a result, the Court will defer ruling on the motion with respect to the deposition of Kurt Crosby until it has been provided with the list of questions and the Rule 30(b)(6) deposition transcript.

**IV. Conclusion**

Accordingly,

**IT IS ORDERED** that the Petitioners' **Petitioners Crosby Tugs, LLC and Tara Crosby, LLC's Motion to Quash and/or Postpone Depositions of Kurt Crosby and Ivy Danos (R. Doc. 71)** is **DEFERRED IN PART** and **DENIED AS MOOT IN PART**.

The motion is **DENIED AS MOOT** with respect to the deposition of Ivy Danos and a ruling on the motion is **DEFERRED** with respect to the deposition of Kurt Crosby.

**IT IS ORDERED** that subsequent to the Rule 30(b)(6) deposition of Wade Savoy in this matter the Claimants shall submit to the Court the specific questions it seeks to ask Kurt Crosby as well as the transcript of the Rule 30(b)(6) deposition for the Court to review. This information shall be sent to **efile-Roby@laed.uscourts.gov**.

**IT IS FURTHER ORDERED** that Petitioners' **Motion for Leave to File Supplemental Exhibit in Support of Motion to Quash (R. Doc. 84)** is **GRANTED**.

New Orleans, Louisiana, this 18th day of June 2018.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**