UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN THE MATTER OF TARA CROSBY, LLC AND CROSBY TUGS, LLC, AS THE OWNERS AND OWNERS *PRO HAC VICE* OF THE M/V CROSBY COMMANDER AND HER CARGO, ENGINES, TACKLE, GEAR, APPURTENANCES, ETC. *IN REM*, PETITIONING FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | CIVIL ACTION<br><br>NO. 17-5391<br><br>SECTION M (4) |

## ORDER & REASONS

Before the Court is a motion by petitioners Tara Crosby, LLC and Crosby Tugs, LLC (together, "Crosby") to exclude claimants' marine safety expert, Joseph R. Bridges, arguing that his opinions are inadmissible legal conclusions, will not aid the jury, or otherwise do not comply with the *Daubert* standard for the admissibility of expert testimony.[1] Claimants Joseph Hebert and Robert Pitre (together, "Claimants") respond in opposition arguing that Bridges is qualified to testify as a marine safety expert and his opinions will assist the jurors in evaluating issues outside of their ordinary experience.[2] Crosby replies in further support of its motion, arguing that

---

[1] R. Docs. 282; 282-1. Crosby does not contest Bridges's qualifications to testify as a marine safety expert. *See* R. Doc. 282-1. However, Crosby argues that Bridges's report was not produced timely. *Id.* at 2. Claimants originally retained John Pierce as a marine safety expert. *Id.* In September 2021, during the long pendency of this case, Pierce died. *Id.* With Crosby's permission, claimants procured Bridges's services in November 2021. *Id.* Claimants produced Bridges's report, which incorporated Pierce's report, to Crosby on January 7, 2022. *Id.* Crosby complains that this was too late because it was "on the eve of the pre-trial conference" for a then-scheduled February 2022 trial. *Id.* Due to a surge in COVID-19 cases, the trial was continued from February 7, 2022, to July 25, 2022, leaving Crosby plenty of time to seek leave to depose Bridges, obtain countervailing expert opinions, or challenge Bridges's report in a more timely fashion. R. Doc. 269. But Crosby waited until May 2022 to file the present motion. R. Doc. 282. Because the perceived "time crunch" could have been avoided by more expeditious action on both sides, the Court will not address the timeliness argument.

[2] R. Doc. 284.

Bridges's opinions are unreliable because he never inspected the vessel, winch, brake, or vessel records, and he offers nothing that would help the jurors determine issues outside of their purview.[3]

A district court has discretion to admit or exclude expert testimony under the Federal Rules of Evidence. *General Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held that Rule 702 requires a district court to act as a gatekeeper to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable." Rule 702 of the Federal Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The reliability inquiry requires a court to assess whether the reasoning or methodology underlying the expert's testimony is valid. *See Daubert*, 509 U.S. at 592-93. In *Daubert*, the Supreme Court listed several non-exclusive factors for a court to consider in assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Id.* at 593-95. However, a court's evaluation of the reliability of expert testimony is flexible because "[t]he factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150

---

[3] R. Doc. 289.

(1999) (quotations omitted).  In sum, the district court must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.  The party offering the testimony must establish its reliability by a preponderance of the evidence.  *See Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

Next, the district court must determine whether the expert's reasoning or methodology "fits" the facts of the case and whether it will assist the trier of fact to understand the evidence, *i.e.*, whether it is relevant.  *Daubert*, 509 U.S. at 591.  An expert's testimony is not relevant and may be excluded if it is directed to an issue that is "well within the common sense understanding of jurors and requires no expert testimony."  *Vogler v. Blackmore*, 352 F.3d 150, 155 (5th Cir. 2003).  Further, an expert cannot make "legal conclusions reserved for the court," credit or discredit witness testimony, or "otherwise make factual determinations reserved for the trier of fact."  *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014).

Rule 702 also requires that an expert be properly qualified.  Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact.  *Rushing v. Kan. City S. Ry. Co.*, 185 F.3d 496, 507 (5th Cir. 1999), *superseded in part by statute on other grounds as noted in Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020).  A witness qualified as an expert is not strictly confined to his area or practice but may testify regarding related applications; a lack of specialization goes to the weight, not the admissibility of the opinion.  *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195-96 (5th Cir. 2018).

The facts, data, and sources used in an expert's opinion are generally considered by the jury in weighing the evidence, but "in some cases 'the source upon which an expert's opinion relies is of such little weight that the jury should not be permitted to receive that opinion.'" *Jacked Up, L.L.C. v. Sara Lee Corp.*, 807 F. App'x 344, 348 (5th Cir. 2020) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). As the gatekeeper, a district judge must "extract evidence tainted by farce or fiction. Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). "Generally, the fact-finder is entitled to hear an expert's testimony and decide whether the predicate facts on which the expert relied are accurate. At the same time, however, expert testimony that relies on completely unsubstantiated factual assertions is inadmissible." *Moore v. Int'l Paint, L.L.C.*, 547 F. App'x 513, 515 (5th Cir. 2013) (internal quotation marks, alterations, and citations omitted). Ultimately, the expert must "'bring to the jury more than the lawyers can offer in argument.'" *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1986)).

Having considered the parties memoranda, the record, and applying the *Daubert* standard to Bridges's report, the Court finds that Bridges may testify as an expert in marine safety as to those opinions in Pierce's reports that fall within the ambit of permissible expert testimony. The opinions in Bridges's own report largely mirror those offered by Pierce, so the Court does not view this limitation as overly restrictive. On the one hand, then, Bridges may testify about the ways in which he believes Crosby was not in compliance with its Safety Management System policies; and the ways in which weather and the vessel's condition may have affected navigation, maneuvering, and ship handling, and thereby made the vessel susceptible to harm. These topics are within the ken of a seasoned sea captain like Bridges with years of experience in the maritime industry.

4

Bridges may also testify about his critique of the reports of Crosby's experts, as set out in his own report. The perceived flaws in Bridges's analysis, such as his failure to inspect the vessel and equipment, can be addressed by Crosby through cross-examination or countervailing expert testimony.

On the other hand, though, Bridges (as would have been true for Pierce) may not testify as to legal conclusions, including, for example, that the vessel was unseaworthy or Crosby negligent. These opinions invade the province of the Court as keeper of the law, the jury as factfinder, or both. *See, e.g.*, *Prestenbach v. Chios Challenge Shipping & Trading S.A.*, 2005 WL 517445, at *7 n.19 (E.D La. Feb. 24, 2005). Bridges cannot "tell the jury what result to reach," so any such opinions are "a step too far," usurping the roles of judge and jury. *Ponds v. Force Corp.*, 2016 WL 7178483, at *3 (E.D. La. Dec. 8, 2016) (limiting expert testimony in railroad personal injury case).

Further, Bridges cannot offer testimony that does little more than rehash Claimants' theory of the case or smear Crosby's reputation, including, for example, that the company was going bankrupt; was not committed to safety, health, and environmental management; or failed to maintain efficiency in operations by not doing jobs safely and correctly. These opinions are not based on Bridges's expertise, are unsupported by industry custom, practice, or standards, and constitute legal conclusions, at best, and scurrilous speculation, at worst. Moreover, both Pierce's and Bridges's fourth opinions, namely, that Crosby did not adequately investigate the incident, are impermissible because they are irrelevant to the facts at issue (including, for example, an explanation of how the sinking happened).

The Court will otherwise evaluate the relevance, permissibility, and admissibility of Bridges's testimony on a question-by-question basis at trial. Claimants' counsel should proceed

cautiously in questioning Bridges at trial. "[T]he questions must be worded so as not to invite objectionable testimony." *Ponds*, 2016 WL 7178483, at *3. Any transgressions may result in exclusion of Bridges's testimony and opinions in whole or in part.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Crosby's motion to exclude Bridges (R. Doc. 282) is DENIED as to generally excluding his testimony, but GRANTED as to specific opinions and statements as explained above.

New Orleans, Louisiana, this 18th day of May, 2022.

                                                         BARRY W. ASHE
                                                         UNITED STATES DISTRICT JUDGE